Considered by MARQUETTE, MILLIKEN, and PHILLIPS.

---

DENVER LIVE STOCK COMMISSION CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4527.   Promulgated August 2, 1927.

Personal service classification denied.

*Ralph B. Mayo, C. P. A., Leslie E. Greene, C. P. A.*, and *F. Tillman Browne, C. P. A.*, for the petitioner.
*A. G. Bouchard, Esq.*, for the respondent.

This is an appeal from the determination of a deficiency of $7,000.96 in income and excess-profits taxes for the fiscal year ended May 31, 1920. The petitioner alleges that the Commissioner erred in denying it classification as a personal service corporation under the Revenue Act of 1918.

FINDINGS OF FACT.

Petitioner is a Colorado corporation with principal offices at Denver and is engaged in buying and selling live stock on commission. It owns no stock and neither buys nor sells on its own account.

The stock is shipped on consignment to petitioner and placed in pens allocated to it at the stockyards. In the yard offices of all the railroads bulletins are posted showing the cattle received, to whom consigned and the pens in which they are herded. Each morning petitioner's yardman ascertains the cattle consigned to it and a representative of the stockyards, after counting them, delivers the cattle to petitioner. They are then fed and watered by petitioner and classified for marketing, and sold in the market to various classes of buyers. They are then weighed to the account of the owner and delivered to the purchasers. Petitioner collects the purchase price and after deducting freight, feed and stockyard charges, and its commission remits the balance to the owner or consignor. The commission received by petitioner is a fixed sum per head, with a maximum per carload, and is not based upon the sale price.

Prior to the taxable year petitioner also engaged in a loan business, but early in the calendar year 1919 it determined to withdraw therefrom. In January, 1919, there was incorporated the Stockmen's Loan Co. with 1,000 shares of capital stock, for the purpose of taking over the loan business. Pursuant to a verbal arrangement with petitioner, as the loans matured renewals or further loans were made by the loan company direct to the borrower when they were considered satisfactory. By this arrangement and the liquidation of loans the amount of loans carried by petitioner in the taxable year was considerably less than that carried in prior years, the loans carried over being those that were unacceptable to the loan company.

During the taxable year petitioner made loans and advances aggregating $167,444.74 to its customers, with some of whom one or more of its stockholders were associated in outside business deals. Of this total amount loans were made to only twelve customers having no interest in petitioner, either as stockholder or employee. At the beginning of the taxable year petitioner held notes receivable in the amount of $335,596.41, and at the close of the year its notes receivable aggregated $195,500.47. Of the notes receivable on hand at the close of the year $23,619.63 represented loans to customers not connected

with its business, and $171,880.84 represented loans or advances to an employee and customers with whom one or more of its stockholders were associated in outside business.

The stockholders of the petitioner and the shares held by each in the taxable year, were:

| Name | Office | Number of shares | Percentage of total shares |
|---|---|---|---|
| Ben Kemper | President and general manager | 90 | 45 |
| John Lutz | Secretary and treasurer | 60 | 30 |
| R. M. Coyte | Feed buyer | 10 | 5 |
| George Murray | Yard foreman | 6 | 3 |
| P. C. Allen | Head bookkeeper | 6 | 3 |
| M. N. McWilliams | None | 19 | 9. 5 |
| J. A. Rendle | None | 9 | 4. 5 |
| Total | | 200 | 100. 0 |

Five of the stockholders were regularly and actively engaged in the conduct of the business and devoted the entire business day to the affairs of petitioner. Kemper was in charge of the Cattle Department, Lutz the Hog and Sheep Department, Coyte the Feed Department, Murray the Yard Department, and Allen the Bookkeeping Department. Petitioner had seven employees, not stockholders, performing the duties of stenographer, assistant bookkeeper and yardmen. It had two salaried salesmen, not stockholders, R. W. Johnston and Roy Standish, who assisted Kemper in the Cattle Department and were under his supervision. The active stockholders produced practically all of the commission business, only a small portion being attributable to the two salesmen. The nonactive stockholders, McWilliams and Rendle, were large owners of cattle and through their influence directed some business to the petitioner.

During the taxable year petitioner made sales and purchases of live stock for 2,200 customers, amounting to $10,600,000, upon which it received gross commissions aggregating $84,246.25, of which $985 was attributable to sales and purchases made for customers, not associated with stockholders. From other sources, including interest on loans, it received gross income in the amount of $22,334.34. The expenses incurred in the production of commission income amounted to $50,848.54, leaving a net commission income of $33,397.71, and the expenses incurred in the production of income from other sources amounted to $27,828.71, including interest paid, leaving a net loss of $5,494.37. The total gross income from all sources was $106,580.59 and the total expenses incurred in the pro-

duction thereof amounted to $78,677.25, leaving a net income from all sources of $27,903.34. Petitioner filed a return for the taxable year as a personal service corporation and reported commission income in the amount of $84,246.25 and income from other sources in the amount of $6,723.60, or a total income of $90,969.85, from which it made deductions in the amount of $61,665.48, showing a net income of $29,304.37. Upon examination and audit respondent found the true net income to be $27,903.34 and denied petitioner classification as a personal service corporation. In schedule A–14, attached to the return, petitioner made the following statement:

The income of this corporation is due to the activities of its members in purchasing and selling live stock for its customers from whom commissions on purchases and sales are received. The employment of capital is entirely incidental to the main business, which is buying and selling of live stock for commissions. It is found necessary in the conduct of the business to accommodate customers by certain loans and advances, which in the main are financed by discounting customers' notes or by borrowing; but is partly financed by our own capital.

The resources and liabilities of petitioner as of the beginning and the close of the taxable year were:

|  | June 1, 1919 | May 31, 1920 |
| --- | --- | --- |
| RESOURCES | | |
| Cash | $10, 255. 03 | $3, 030. 40 |
| Accounts receivable | 80, 113. 16 | 111, 537. 62 |
| Notes receivable | 335, 596. 41 | 195, 500. 47 |
| Furniture and fixtures | 5, 000. 45 | 4, 575. 45 |
| Exchange membership | 2, 000. 00 | 2, 000. 00 |
| Bank stock | 5, 300. 00 | 5, 300. 00 |
| Fair association | 150. 00 | 150. 00 |
| Liberty bonds | 10, 520. 20 | 20, 087. 64 |
| Total | 448, 935. 25 | 342, 181. 58 |
| LIABILITIES | | |
| Bank overdraft | ---------- | 20, 646. 19 |
| Accounts payable | 20, 474. 22 | 12, 366. 75 |
| Notes payable | 280, 265. 54 | 169, 744. 65 |
| Reserve for depreciation | 2, 907. 18 | 3, 364. 72 |
| Capital stock | 20, 000. 00 | 20, 000. 00 |
| Surplus | 125, 288. 31 | 116, 059. 27 |
| Total | 448, 935. 25 | 342, 181. 58 |

The surplus account was carried to cover loans made and discounted at the banks, and as a fund upon which stockholders might draw.

Respondent, having denied petitioner personal service classification, determined a deficiency of $7,000.96 in income and profits taxes for the taxable year.

OPINION.

Van Fossan: We have for consideration here the single question of whether or not petitioner is entitled to classification as a personal service corporation under section 200 of the Revenue Act of 1918.

The Act specifies three essential elements that must concur to constitute a corporation one of personal service—(1) the principal owners or stockholders shall be regularly engaged in the active conduct of the affairs of the corporation; (2) its income must be ascribed primarily to their activities, and (3) capital (invested or borrowed) must not be a material income-producing factor. The absence of any one of these elements is fatal to a claim for personal service classification. The statute also expressly excludes any corporation 50 per cent or more of whose gross income is derived from trading as a principal or from Government war contracts.

Petitioner calls attention to the fact that the statute does not define income as used in the general definition of personal service corporations, and insists that it means "net income." There is nothing in the Revenue Act to indicate that Congress intended to give the term such a restricted meaning. Words of a statute are to be taken in their ordinary, commonly accepted meaning in the absence of a clear intention to the contrary appearing in the statute. The Supreme Court has succinctly expressed the meaning of the term as used in the Sixteenth Amendment and the income tax acts:

Income may be defined as the gain derived from capital, from labor, or from both combined, provided it be understood to include profit gained through a sale or conversion of capital assets * * *. Eisner v. Macomber, 252 U. S. 189, 207.

We are of the opinion that the term, as used in section 200, means gross income as it is commonly understood.

In the case at bar we find that five of the seven stockholders of petitioner owning 86 per cent of the capital stock, devoted the entire business day to the active conduct of petitioner's affairs. Every department or phase of the business was under the active supervision of one of these five stockholders. There were, it is true, a number of nonstockholder employees, but, with the exception of two, their duties were clerical and not of an income-producing nature. Two of the employees were salesmen, serving as assistants to one of the stockholders and under his direct supervision, but a very small portion of the income, if any, can be ascribed to their activities. There may be some question as to whether or not petitioner satisfies the statutory requirement as to these qualifications, but in view of our decision as to its use of capital, it is unnecessary to rule thereon.

It appears from the record that petitioner not only found it necessary to employ capital in the conduct of its business, but that such

capital produced more than 20 per cent of its income. Under such circumstances it can not be said that capital was not a material income-producing factor.

We conclude that in the business as conducted by petitioner, capital (invested or borrowed) was a material income-producing factor, and lacking one of the essential elements of a personal service corporation, petitioner must be denied classification as such. *Appeal of C. N. Merritt & Brother, Inc.*, 1 B. T. A. 927; *Appeal of Kossar & Co.*, 4 B. T. A. 1164; *Appeal of Seaboard Mills, Inc.*, 5 B. T. A. 575; *Hubbard-Ragsdale Co.* v. *Dean*, 15 Fed. (2d) 410; affd. 15 Fed. (2d) 1013.

*Judgment will be entered for the respondent.*

Considered by MARQUETTE, MILLIKEN, and PHILLIPS.